UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 23-cv-23216-BLOOM/Torres

ADRIAN FORBES,

      Plaintiff,

v.

BRITT'S BOW WOW BOUTIQUE, INC.,
and MERRI COLVARD,

      Defendants.

_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendants Britt's Bow Wow Boutique, Inc. and Merri Colvard ("Defendants") Motion for Summary Judgment, ECF No. [30] ("Motion"). Plaintiff Adrian Forbes filed a Response in Opposition, ECF No. [37], to which Defendants filed a Reply, ECF No. [38]. The Court has reviewed the Motion, all supporting and opposing submissions,[1] the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendants' Motion is denied.

## I.  BACKGROUND

This is an action for uncompensated wages arising from Defendants' failure to pay Plaintiff for overtime work pursuant to the Fair Labor Standards Act ("FLSA"). Plaintiff's Complaint alleges Defendants failed to pay Plaintiff his "full and proper overtime wages." ECF No. [1] ¶ 13. Plaintiff asserts a FLSA claim for unpaid overtime wages against Defendants.

---

[1] Defendants filed a Statement of Material Facts ("SMF") in support of their Motion, ECF No. [31]. Plaintiff filed a Response in Opposition to Plaintiff's Statement of Material Facts ("OSMF"), ECF No. [36], to which Defendants filed a Reply ("RSMF"), ECF No. [39].

Defendants' Motion contends the undisputed evidence establishes Plaintiff did not work overtime, and Defendants neither knew nor should have known Plaintiff worked overtime. Defendants also argue they are entitled to summary judgment because Plaintiff's deposition testimony establishes Plaintiff does not have viable overtime claims. Plaintiff responds that the evidence supports the reasonable inference that Plaintiff worked unpaid overtime, and Defendants either knew or should have known Plaintiff worked unpaid overtime.

### A.  MATERIAL FACTS

Based on the Parties' briefings and the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.

Plaintiff began working for Defendants in 2018. ECF No. [30-3] at 19. Defendant Britt's Bow Wow Boutique, Inc. offers dog kennel and dog-grooming services, *see, e.g.*, ECF No. [30-3] at 41-42, but the precise nature of the business is unclear. Plaintiff testified that Colvard was his supervisor. *See* ECF No. [36-1] ¶¶ 5, 6. Colvard testified "Plaintiff worked for Britt's Bow Wow from Florida."[2] ECF No. [30-4] ¶ 2.

### i.  Plaintiff's Job Duties

Plaintiff testified Defendants failed to compensate him for overtime work "from August 23, 2020 through mid-April 2021[.]" ECF No. [36-1] ¶ 3 ("Claim Period"); *see* ECF No. [30-3] at 9. Plaintiff was employed by Defendants "as a pet transporter, animal caretaker, and general laborer" during the Claim Period. ECF No. [36-1] ¶ 3. Plaintiff provided the following description of his job duties:

> A. I was picking up dogs from the airport; dropping off dogs; picking up dogs from dog owners to take them to the airport; cleaning cages; breaking down cages; fixing the kennel; building sheds; pressure washing driveways; taking the van to be serviced; cleaning the van; taking care of the pets that were inside the

---

[2] Both Britt's Bow Wow Boutique, Inc. and Colvard appear to be based in Michigan, *see* ECF No. [30-3] at 58-59, but this is also unclear.

kennel; driving to the airport; waiting for a pet to come out from the airport. There
were a bunch of things to do.

ECF No. [30-3] at 41-42; *see* ECF No. [36] ¶ 4.

### ii.  **Plaintiff's Work Schedule**

Plaintiff testified he worked an average of 73 hours a week during the Claim Period. ECF

No. [30-3] at 27, 50, 53; ECF No. [36-1] ¶ 4. Plaintiff explained how many hours he typically

worked per day during this period:

Q. Did you have a schedule?

A. Yes.

Q. What was your schedule?

A. On any given week, I will probably have to get there at like 7:30 in the morning,
Mondays, Wednesdays, and Fridays, and/or probably around 6 p.m. Tuesdays and
Thursdays.

Q. So you are saying Monday, Wednesday and Friday you are supposed to start at
7:30 a.m.

A. Yes.

Q. On the schedule, when does it show you are supposed to leave?

A. When the job is completed. It's usually in the morning, like around 1:30 a.m.

Q. What time are you supposed to start Tuesday and Thursday?

A. On any given week, my hours would change. I usually start around about 6 p.m.

Q. I didn't understand that.

A. I said on any given week my hours would change, but I would usually be there
around 6 p.m.

Q. And what time would you leave when you got there at 6 p.m.?

A. Probably like at 3 or 4 a.m. in the morning.

Q. What about Saturdays?

A. On Saturdays, I would get there probably at around 12.

Q. And you would stay until when?

A. Probably 7:30 p.m.

ECF No. [30-3] at 46-47; *see* ECF No. [30-6] ¶ 4.

Plaintiff acknowledged "[t]his schedule totals approximately 80.5 hours per week," not 73, explaining he "only worked an average of 73 hours per week during the Claim Period because, with Defendants' knowledge and permission, I visited my sick (and now deceased) mother briefly during some of the days to check on her." ECF No. [36-1] ¶ 4; *see* ECF No. [30-3] at 49 ("Chris [Colvard] let me go home every once in a while throughout the day to check on her and give her lunch or dinner or whatever the case may be."). Plaintiff testified this was his average schedule "[f]rom the time I started working [for Defendants] until probably around mid-April of 2021." ECF No. [30-3] at 50.[3]

Plaintiff could not identify a particular week during the Claim Period when he worked the above schedule. *See, e.g.*, ECF No. [30-3] at 19 ("[Q]. Can you identify a single day of the week, pick a day with a date, that you worked more hours than your time records show?" A. Every day."). Plaintiff also could not recall the hours he worked or specific tasks he performed on a particular day during the Claim Period. *See, e.g.*, *id.* at 23.

### iii. Plaintiff's Time Records

The Parties dispute whether Defendants kept records of Plaintiff's hours during the Claim Period. OSMF ¶¶ 21-23; RSMF ¶¶ 21-23. Plaintiff does not point to any documents that demonstrate he worked uncompensated overtime. *See* SMF ¶ 11; OSMF ¶ 11; *see also* ECF No. [30-3] at 39 "([Q]. Again, do you have a document in these 800 pages that you sent over that shows

---

[3] Plaintiff explained his hours declined around mid-April 2021 because his co-worker, Sydney Keefe ("Keefe"), "took over all the work that I was doing." ECF No. [30-3] at 50.

here is the amount of hours I actually worked on a given day?" Yes or no? A. No."). However,

Plaintiff testified his supervisor, Defendant Merri Colvard[4] ("Colvard"), prevented him from

reporting overtime hours:

> Q. Real simple. Again, did you submit any type of paper or any type of document showing the hours that you worked each week? Yes or no?
>
> A. No. It doesn't show my actual time worked.
>
> Q. Did you submit something each week showing time records of what you did?
>
> A. No. Chris wouldn't let me report my actual time worked.
>
> Q. I didn't ask you that, sir. Again, did you submit a piece of paper every week that listed a number of hours each day? Yes or no?
>
> A. Yes, but it wasn't my actual time worked.
>
> …
>
> Q. What else do you have to say, sir?
>
> A. Yes, but it wasn't accurate.
>
> Q. Okay. The information that you submitted that was not accurate, you were the one who wrote that on a piece of paper, correct?
>
> A. Chris wouldn't let me –

ECF No. [30-3] at 12-14.

When asked how he was compensated for his time, Plaintiff testified "I don't know. Chris

[Colvard] doesn't keep accurate time records." *Id.* at 20; *see also* ECF No. [36-1] ¶ 5 (Colvard

"only wanted me to report some of the jobs transporting animals and … specific tasks around the

kennel[,] … told me not to report my entire schedule[,] … said [she] would not pay overtime[,] …

---

[4] The filings typically refer to Defendant Merri Colvard as "Chris". *See, e.g.*, ECF No. [30-3] at 10.

falsely accused me of overreporting my time[,] and threatened to terminate me if I reported too

much time.").

Plaintiff acknowledged he did not have documents memorializing those conversations,

however:

Q. What is your answer, sir?

A. Chris wouldn't let me report my actual time worked.

Q. I didn't ask you that. Was the information that you submitted showing your time
records correct or incorrect?

　　　MR. KOZOLCHYK: Objection. Form.

THE WITNESS: No. Chris wouldn't let me report my actual time.

BY MR. WAIS:
Q. I am going to ask you one more time. Was the information that you submitted
accurate or inaccurate to the company showing the amount of hours you worked?

A.  Inaccurate. Chris wouldn't let me --

Q. I heard that. Do you have anything stating in writing that you are not to report
accurate hours?

　　　MR. KOZOLCHYK: Objection. Form. Mr. Wais, you interrupted my
　　　client. You prevented him from finishing his answer.

　　　MR. WAIS: I didn't.

BY MR. WAIS:
Q: Go on. Do you have anything in writing that Chris sent you saying do not report
the correct hours? Yes or no?

　　　MR. KOZOLCHYK: Again, Mr. Wais, you're interrupting my client.

THE WITNESS: Not in writing. No.

BY MR. WAIS:
Q: Did you ever send [Colvard] an email or text message saying, "Chris, I want to
report accurate hours; please allow me to do so"? Yes or no?

A.  No.

*Id.* at 16-18.[5]

Plaintiff further testified Defendants did not formally track his hours during the Claim

Period:

> Q. Did you submit time cards each week that showed the amount of hours you worked every day? Yes or no?
>
> A. No.
>
> Q. You did not submit time cards each week?
>
> A. No.
>
> Q. What did you submit to get paid?
>
> A. I contacted Chris.
>
> Q. You contacted Chris. So all those records we have showing your time cards, those are not accurate, you are telling me?
>
> A. They don't show my actual time worked.
>
> …
>
> Q. You kept records on a time clock on your phone, correct?
>
> A. No.
>
> Q. Do you use a time clock on your phone?
>
> A. No.
>
> Q. Did you text a copy each week of your time records to Chris?
>
> A. No.
>
> Q. How did you get your time records to Chris?
>
> A. Verbally.

---

[5] Plaintiff also testified he "complained to Chris a lot and said my [pay]check was incorrect[,]" although he acknowledged he never called the payroll company to complain about his paycheck. *See* ECF No. [30-3] at 42-43. The Parties do not rely on any paychecks or other payroll evidence.

Q. I can't hear you.

A. Verbally. Chris wouldn't let me report my actual time worked. When I got to the company, I called to let Chris know I was there. When I left, I called to let Chris know I was leaving.

*Id.* at 10-11, 18-19.

Plaintiff's Declaration explains "[d]uring my Claim Period, I primarily could only report via text my work-related trips away from the kennel such as the airport." ECF No. [36-1] ¶ 5; *see also id.* ("Defendants did not have a formal timekeeping system[,] … did not maintain any system for tracking [my] time[,] … never required me … to clock in or out[,] … [and] never tracked or recorded the hours that I actually worked.").

Colvard testified "Plaintiff submitted the time he worked to me from Florida, and he was paid for all the time he submitted." ECF No. [30-4] ¶ 2. Colvard explained "[m]ost times, Plaintiff detailed the time he told me he worked in text messages sent to me on a weekly basis." *Id.* ¶ 3. Colvard further testified she "never told Plaintiff not to submit any time that he worked, and he was always paid for the entirety of the time he submitted to Britt's Bow Wow for payment." *Id.* ¶ 2.

## II. LEGAL STANDARD

### A. Summary Judgment

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*,

477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Further, the Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 Fed. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

### B.  FLSA Overtime Claims

"A plaintiff who has worked overtime without pay may bring a private FLSA action for damages." *Florez v. Workforce Sol. Staffing, LLC et al.*, No. 20-22766-CIV, 2021 WL 7161783 (S.D. Fla. July 26, 2021) (citing 29 U.S.C. § 216(b)), *report and recommendation adopted sub nom.*, No. 20-22766-CIV, 2022 WL 539078 (S.D. Fla. Feb. 23, 2022). The statute of limitations for FLSA claims varies depending on whether the underlying FLSA violation was willful:

> The relevant time period of the FLSA case is either two or three years prior to the date of filing, depending upon whether a plaintiff can establish that the violation was willful: a cause of action arising out of a willful violation may be brought within three years after the action's accrual, whereas the ordinary statute of limitations in cases brought under the FLSA is two years.

*Murray v. Birmingham Bd. of Educ.*, 172 F. Supp. 3d 1225, 1239 (N.D. Ala. 2016) (citing 29 U.S.C. § 255(a)), *dismissed*, No. 16-16924-AA, 2017 WL 5485447 (11th Cir. Mar. 24, 2017).

Under the FLSA, an employer must pay its employees "an overtime wage of one and one-half times his regular rate for all hours he works in excess of forty hours per week." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011); *see also* 29 U.S.C. § 207(a). "In order to prevail on their claim in this case, Plaintiffs must prove that they were suffered or permitted to work without compensation." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314 (11th Cir. 2007) (citing 29 U.S.C. § 201 *et seq.*). "Courts have interpreted this to mean that a FLSA plaintiff must demonstrate that (1) he or she worked overtime without compensation and (2) the [defendant] knew or should have known of the overtime work." *Id.* at 1314-15 (citing *Reich v. Dept. of Cons. and Nat. Res.,* 28 F.3d 1076, 1081-82 (11th Cir. 1994); 29 C.F.R. § 785.11).

## III. DISCUSSION

Defendants contend that the undisputed evidence demonstrates they are entitled to judgment as a matter of law. Defendants argue Plaintiff fails to provide any evidence that he

worked overtime without compensation, or that Defendants knew or should have known of that overtime work. Defendants also argue Plaintiff's deposition testimony establishes he did not work any uncompensated overtime.[6] Plaintiff responds that his testimony establishes a genuine dispute of material fact as to whether Defendants knowingly failed to compensate him for overtime work. Plaintiff contends his testimony sufficiently explains Colvard prevented him from reporting his overtime hours and details his average weekly schedule during the Claim Period. Defendants reply that Plaintiff improperly relies on a "sham" affidavit to support those assertions.

### A. Plaintiff's Declaration

As a threshold matter, the Court disagrees that Plaintiff's Declaration should be disregarded as a "sham affidavit". Defendants rely on this Court's prior decision in *Calvo v. B & R Supermarket, Inc.*, 63 F. Supp. 3d 1369 (S.D. Fla. 2014) for support. As *Calvo* explains, "[w]hen considering a motion for summary judgment, '[a] district court may disregard an affidavit as a sham when a party to the suit files an affidavit that contradicts, without explanation, prior deposition testimony on a material fact.'" *Id.* at 1371 (quoting *Kernel Records Oy v. Mosley,* 694 F.3d 1294, 1300 n. 6 (11th Cir.2012); citing *Wallace v. Pub. Health Trust of Dade Cnty.,* 370 F. Supp. 2d 1247, 1250 (S.D. Fla. 2005)). The sham affidavit rule prohibits self-serving affidavits when "earlier deposition testimony … consist[s] of clear answers to unambiguous questions which negate the existence of any genuine issue of material fact." *Lane v. Celotex Corp.,* 782 F.2d 1526, 1532 (11th Cir. 1986) (quotations omitted); *see also Hamilton v. Coffee Health Grp.,* 949 F. Supp. 2d 1119, 1126 (N.D. Ala. 2013) (observing the sham affidavit rule "applies with equal force to declarations.").

---

[6] Defendants request that the Court conduct a hearing to resolve the instant Motion. The Court finds conducting a hearing is unnecessary. As detailed above, the factual record in this case is quite limited. The instant Motion is appropriately resolved without the benefit of oral argument in light of the limited factual and legal issues.

In *Calvo*, the plaintiff provided a declaration that consisted "in large part of self-serving statements and opinions otherwise unsubstantiated by the record before the Court." 63 F. Supp. 3d at 1372. The declaration at issue in *Calvo* "specifically contradict[ed] her own deposition testimony[,]" yet the plaintiff failed to "explain[] the inherent inconsistencies between her deposition testimony and the [d]eclaration." *Id.* (record citation omitted). This Court therefore concluded the declaration "cannot alone create a genuine dispute of material fact" and disregarded the testimony contained therein "when and to the extent it contradicts Plaintiff's deposition and other clear record evidence." *Id.* at 1372.

Unlike *Calvo*, Plaintiff's Declaration is consistent with his deposition testimony. According to Defendants, Plaintiff's Declaration directly contradicts his previous testimony acknowledging that he could not identify "any day, week, or year that he allegedly worked overtime or the alleged tasks/activities he performed[.]" ECF No. [36] at 4. Defendants' contention misconstrues the record. Plaintiff testified during his deposition that he worked a weekly average of 73 hours a week "[f]rom the time I started working there until probably around mid-April of 2021." ECF No. [30-3] at 50; *see also id.* at 9-10 ("I averaged about 73 hours a week … [e]very week."). Plaintiff's Declaration provides near-identical testimony describing the hours he typically worked each day. *Compare* ECF No. [30-3] at 35 (describing a weekly schedule of 7:30 a.m. to 1:30 a.m. on Mondays, Wednesdays, and Fridays, 6 p.m. to 3 or 4 a.m. on Tuesdays and Thursdays, and 12 p.m. to 7:30 p.m. on Saturdays); *with* ECF No. [36-1] ¶ 4 ("My usual work schedule was Monday, Wednesday, and Friday from about 7:30 a.m. to about 1:30 a.m., Tuesday and Thursday from about 6:00 p.m. to about 3:00 a.m., and Saturdays from about 12:00 p.m. to 7:30 p.m."). The same is true regarding Plaintiff's testimony describing his daily tasks. ECF No. [30-3] at 45; ECF No. [36-1] ¶ 4. Defendants fail to point to any testimony in Plaintiff's Declaration that contradicts

Plaintiff's deposition testimony. The Court accordingly finds no basis to disregard Plaintiff's Declaration as a sham.

### B. Plaintiff's Time Records

The FLSA requires "[e]very employer subject to any provision of this chapter … [to] make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him …." 29 U.S.C. § 211(c); *see also Allen*, 495 F.3d at 1314-15 (11th Cir. 2007) ("[I]t is the employer's duty to keep records of the employer's wages, hours, and other conditions and practices of employment."). As the Eleventh Circuit explained in *Jackson v. Corr. Corp. of Am.*, 606 Fed. App'x 945 (11th Cir. 2015), an employee enjoys a relaxed evidentiary burden to prove that he or she worked unpaid overtime when his or her employer fails to keep time records:

> It is well established that an employee bringing a claim for unpaid overtime wages must initially demonstrate that she performed work for which she was not properly compensated. *See, e.g., Allen v. Bd. of Pub. Educ.,* 495 F.3d 1306, 1314–15 (11th Cir. 2007). However, "it is the employer's duty to keep records of the employer's wages, hours, and other conditions and practices of employment." *Id.* at 1315. For that reason, in situations where the employer has failed to keep records or the records cannot be trusted, the employee satisfies her burden of proving that she performed work without compensation if she "produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 1316 (quotation marks omitted); *see also Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1315 (11th Cir. 2013) (noting that if the employer failed to keep time records, the burden on the employee to show that she worked overtime without compensation is "relaxed").

*Id.* at 952. "If the employee satisfies her burden, the burden then shifts to the employer to present evidence that negates the reasonableness of the inference to be drawn from the employee's evidence." *Id.* n.9 (citing *Lamonica*, 711 F.3d at 1315).

Defendants contend they are entitled to judgment because Plaintiff lacks documentation corroborating his testimony that he was prevented from reporting overtime hours. Defendants observe Plaintiff has the burden to prove that they failed to track his hours, prevented him from accurately reporting his hours, or both. While Defendants are correct that Plaintiff must make this showing to *prevail* on his claims, that observation fails to demonstrate they are entitled to judgment. To meet their burden, Defendants must show that the undisputed evidence establishes they tracked Plaintiff's overtime hours and never prohibited him from reporting overtime hours. In other words, Defendants must show this is *not* a situation "where the employer has failed to keep records or the records cannot be trusted[.]" *Jackson*, 606 Fed. App'x at 952. Plaintiff would then be unable to rely on this relaxed standard to demonstrate "the amount and extent of that [overtime] work as a matter of just and reasonable inference." *Allen*, 495 F.3d at 1316 (quotation marks omitted).

Defendants rely on Colvard's Declaration, a handful of excerpted text messages, and Plaintiff's deposition testimony to make this showing. However, Colvard simply testified "[m]ost times, Plaintiff detailed the time he told me he worked in text messages sent to me on a weekly basis." ECF No. [30-4] ¶ 3. Defendants provide no further explanation as to how they tracked Plaintiff's hours during the Claim Period.

Colvard's Declaration also includes excerpts of text message conversations. *See id.* at 3-5. Colvard testified those texts are "[s]ome examples of these messages[.]" *Id.* at 2. Those text messages fail to show Defendants fulfilled their obligation to track Plaintiff's hours for several reasons. First, none of those messages were sent during the Claim Period. The only visible dates establish the messages were sent in December 2021 or February 2022. *Id.* at 3. Second, Plaintiff accurately observes that the text message are incomplete. Colvard provides what appear to be

snippets of distinct text threads sent at different points in time.[7] *See id.* Moreover, the record is incomplete as the sender and recipient are omitted. The Court accordingly has no ability to determine whether those messages were even sent by Plaintiff or received by Colvard. The remaining messages are between Plaintiff and Keefe. Colvard concedes those messages "contain irrelevant information."[8] ECF No. [30-4] at ¶ 5. The Court agrees. *See id.* at 4-5. Defendants otherwise provide no evidence substantiating their assertion that they tracked Plaintiff's hours.

Instead, Defendants contend Plaintiff's deposition testimony confirms he texted Colvard his hours at the end of each week. The Court disagrees. Plaintiff's deposition testimony is *more* ambiguous than Colvard's testimony.[9] Throughout his deposition, Plaintiff was repeatedly asked whether he recorded and submitted his time weekly. Plaintiff first testified that he did not submit his time weekly. ECF No. [30-3] at 10-12. Plaintiff then testified he submitted some time each week, but repeatedly emphasized the time he submitted was not accurate. *Id.* at 10-12, 14-17. The method Plaintiff used to submit his time is also unclear. Plaintiff testified that he did not submit timecards or texts every week with his hours. *Id.* at 10-12, 18-20. Instead, Plaintiff explained he would often submit his time records "verbally." *Id.* at 18. When asked how he was compensated for his time, Plaintiff simply testified "I don't know. Chris [Colvard] doesn't keep accurate time

---

[7] It is also unclear whether those text messages were produced by Defendants. Defendants assert *Plaintiff* failed to produce those excerpted messages, which they argue "is, to say the least, sanctionable." ECF No. [37] at 5. As discussed, however, it is unclear whether those excerpted messages were even sent by Plaintiff. The Court will not entertain a request for sanctions premised on little more than Defendants unsupported assertions.

[8] The same is true regarding the text message excerpts Defendants attach to their Motion. *See* ECF No. [30-6]. Those messages are immaterial for the same reasons—the conversation was between Plaintiff and Keefe, not Plaintiff and Colvard, the messages were sent after the Claim Period, and the texts do not discuss the hours Plaintiff worked.

[9] Those ambiguities are exacerbated by the manner in which Plaintiff's deposition was conducted. Plaintiff was routinely interrupted by a combination of aggressive questioning, objections by Plaintiff's Counsel, and arguments between opposing Counsel. *See, e.g.*, ECF No. [30-3] at 10-16.

records." *Id.* at 20. Plaintiff later explained he typically would call Colvard at the beginning and end of each day to keep her updated on his work. *See id.* at 60.

For its part, Plaintiff's Declaration provides "[d]uring my Claim Period, I primarily could only report via text my work-related trips away from the kennel such as the airport." ECF No. [36-1] ¶ 5. The Declaration reiterates Plaintiff and Colvard "communicated by telephone and texted on a daily basis." *Id.* ¶ 6.[10] Plaintiff also testified "Defendants did not have a formal timekeeping system[,] … did not maintain any system for tracking [my] time[,] … never required me … to clock in or out[,] … [and] never tracked  or recorded the hours that I actually worked." *Id.*

The Court finds whether Defendants tracked Plaintiff's work hours constitutes a genuine dispute of material fact. Defendants fail to provide a single text message sent by Plaintiff to Colvard during the Claim Period, let alone a message containing his weekly hours. As noted, Defendants also do not point to any payroll or other record evidence to support their position. The Court is accordingly left with Plaintiff and Colvard's conflicting testimony. Plaintiff testified that Defendants did not formally track his time during the Claim Period, and that Colvard prevented him from reporting overtime hours. ECF No. [30-3] at 20; ECF No. [36-1] ¶ 5. Colvard testified Plaintiff would record his hours in weekly text messages. ECF No. [30-4] ¶ 3. Whether Defendants kept records of Plaintiff's hours—and whether any such records can be trusted—accordingly constitutes a genuine dispute of material fact. Resolving this dispute requires evaluating the credibility of Plaintiff and Colvard's conflicting testimony on this record. *See Skop*, 485 F.3d at 1140 (11th Cir. 2007) ("[T]he court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied.") (quoting *Carlin*

---

[10] Plaintiff also explained Colvard "knew and required me to work the schedule I was working, which averaged 73 hours per week. I regularly communicated with Chris [Colvard] on the telephone and he talked about where I was and what work I was doing. She regularly called to check in on me and the status of my tasks and duties[.]" ECF No. [36-1] ¶ 6.

*Comm'n, Inc.*, 802 F.2d at 1356)). Defendants have accordingly failed to show the undisputed evidence establishes they tracked Plaintiff's hours, and the FLSA's relaxed evidentiary standard is therefore inapplicable.

### C. Overtime Compensation

Defendants contend they are entitled to judgment on Plaintiff's overtime claims because Plaintiff cannot show (1) he worked uncompensated overtime; and (2) that Defendants knew or should have known of Plaintiff's overtime work as a matter of a just and reasonable inference. Plaintiff responds that his testimony sufficiently establishes the amount and extent of his overtime work as a matter of just and reasonable inference, and Defendants knew or should have known of this work.

### i.  Whether Plaintiff Worked Overtime Without Compensation

Plaintiff repeatedly testified that Colvard did not formally track his hours and told him not to report his overtime hours. *See, e.g.*, ECF No. [30-3] at 12, 20; ECF No. [36-1] ¶ 5. As discussed, Plaintiff also testified he worked an average of 73 hours per week during the Claim Period, with a daily breakdown of "Monday, Wednesday, and Friday from about 7:30 a.m. to about 1:30 a.m., Tuesday and Thursday from about 6:00 p.m. to about 3:00 a.m., and Saturdays from about 12:00 p.m. to 7:30 p.m." ECF No. [36-1] ¶ 4; *see* ECF No. [30-3] at 35 (same).[11] Regarding his job duties, Plaintiff described himself as "a pet transporter, animal caretaker, and general laborer[]" whose duties included "cleaning dog cages … [and] kennel areas … cleaning all areas with bleach, soap, and disinfectant … pick[ing] up and drop[ping] off dogs, cats, and cages at the airport[,]" among other duties. *Id.* ¶¶ 3, 4; *see* ECF No. [30-3] at 41 (similarly describing those duties).

---

[11] Plaintiff acknowledged "[t]his schedule totals approximately 80.5 hours per week," not 73. ECF No. [36-1] ¶ 4. Plaintiff explained he "only worked an average of 73 hours per week during the Claim Period because, with Defendants' knowledge and permission, I visited my sick (and now deceased) mother briefly during some of the days to check on her." *Id.*; *see* ECF No. [30-3] at 49.

Defendants argue this testimony fails to create a genuine dispute of material fact regarding whether they failed to compensate Plaintiff for overtime work.[12] Plaintiff responds that his testimony is sufficient because it explains Defendants failed to track his hours and provides a reasonable weekly average of his overtime work. As discussed, the Court finds whether Defendants tracked Plaintiff's hours—and whether Plaintiff may consequently rely on the FLSA's relaxed evidentiary standard—constitutes a genuine dispute of material fact. Defendants fail to demonstrate they are entitled to judgment as a matter of law even if this relaxed standard applies.

Plaintiff accurately observes a relaxed burden-shifting scheme applies to FLSA overtime claims "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes[.]" *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *see also Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1278-79 (11th Cir. 2008).[13] Plaintiff accordingly contends his testimony explaining that Colvard failed to record his hours and prevented him from reporting his overtime hours demonstrates he may rely on this relaxed standard. Plaintiff also argues his testimony detailing his average weekly schedule during the Claim Period demonstrates that whether he worked uncompensated overtime constitutes a genuine dispute of material fact. Plaintiff primarily relies on *Allen v. DeLuca*, No. 18-81265-CIV-DIMITROULEAS, 2019 WL 3890457 (S.D. Fla. June 18, 2019) for support. In *DeLuca*, the

---

[12] Defendants also point out Plaintiff's Statement of Claim, ECF No. [1-3], initially estimated Plaintiff worked 50 hours during the Claim Period, not 73. Defendants' reliance on Plaintiff's Statement of Claim is misplaced. As Plaintiff accurately observes, this filing is simply "[a]n estimate, based on the [p]laintiff's best recollection as to the hours he worked and compensation he received[.]" *Collado v. 450 N. River Drive, LLC*, No. 22-cv-23074, 2022 WL 6348069, at *1 (S.D. Fla. Sep. 29, 2022) (Bloom, J.); *see also Calderon v. Baker Concrete Constr., Inc.*, 771 F.3d 807, 811 (11th Cir. 2014) (explaining a statement of claim is simply "an extra-Rules practice used by the district court for its convenience and to aid in case management. It does not have the status of a pleading[.]").

[13] Defendants suggest *Anderson* is no longer good law. This suggestion is meritless. *Anderson's* burden-shifting framework remains controlling law under Eleventh Circuit precedent. *See, e.g., Jackson*, 945 F. App'x at 952; *Lamonica*, 711 F.3d at 1315.

defendant-employer failed to maintain the plaintiff-employee's time records. *Id.*, at \*8-9. The court accordingly found the plaintiff-employee could prove she worked uncompensated overtime as a matter of just and reasonable inference. *Id.*, at \*9. The court in *DeLuca* concluded the plaintiff's testimony describing her overtime work was sufficient, observing "[t]he reasonableness, the credibility, of the hours Plaintiff alleges is a question for the jury." *Id.*

Defendants contend they are entitled to judgment because Plaintiff's testimony is insufficient under controlling precedent. Defendants rely on *Jackson v. Corrections Corp. of Am.*, 606 F. App'x 945 (11th Cir. 2015) and *Morgan v. Kalka & Baer, LLC*, 750 F. App'x 784 (11th Cir. 2018) for support. In *Jackson*, the plaintiff "never stated with any clarity or precision the number of hours she allegedly worked, the amount or nature of that work, where or when the work was completed, or anything else that would assist a factfinder in approximating Jackson's unpaid overtime." *Id.* at 952. The Eleventh Circuit observed it was also "undisputed that [the defendant] provided [the plaintiff] with timesheets to document both her time and tasks completed while she was working from home." *Id.* Further, "the only month for which [the plaintiff] documented any overtime" was not included in the claim period. *Id.* The Eleventh Circuit accordingly affirmed the district court's finding that the plaintiff's "vague and contradictory assertions concerning the number of hours she worked from home are not evidence from which can be drawn just and reasonable inferences about the nature or extent of that work." *Id.* (footnote omitted).

Unlike *Jackson*, Plaintiff stated his average weekly work schedule during the Claim Period with relative precision, complete with details about his tasks. The plaintiff in *Jackson* repeatedly contradicted her own testimony regarding her overtime hours. For example, the plaintiff testified that she worked "7.5 [to] 10 hours per week" of unpaid overtime then filed a declaration that she worked "15, 20 hours a week[.]" *Id.* n. 10 (alterations accepted). Plaintiff consistently testified he

worked an average of 73 hours a week, complete with a daily breakdown of his hours, as well as specific details about his job duties.[14] *Compare* ECF No. [36-1] ¶¶ 3, 4; *with* ECF No. [30-3] at 35, 41. Moreover, the Parties dispute whether Plaintiff submitted his hours each week, or whether Defendants recorded those hours. The record is devoid of any timecards or payroll evidence and features conflicting testimony regarding how Plaintiff reported his hours. The only affirmative evidence Defendants provide is Colvard's uncorroborated testimony that she "never told Plaintiff not to submit any time that he worked, and he was always paid for the entirety of the time he submitted[.]" ECF No. [30-4] ¶ 2. The Court accordingly finds *Jackson* is distinguishable considering the genuine dispute regarding whether (and how) Plaintiff's hours were recorded, Plaintiff's consistent testimony describing his overtime work, and the absence of *any* record evidence to rebut Plaintiff's testimony.

*Morgan* is similarly distinguishable. The plaintiff in *Morgan* testified that "she recorded her time by logging into a software system with her username and password, recording the number of hours she worked that day, and submitting the entry for approval." 750 F. App'x at 790. However, "when she submitted 9, 9.5, or 10 hours, only 8 would be approved." *Id.* The plaintiff argued she "worked 140 unpaid hours and 'tried to keep a note of it' by 'go[ing] back and review[ing] [her] e-mails' and 'mileage statements.'" *Id.* The plaintiff failed to "identify the specific dates she worked more than 8 hours," although she did offer "to produce the emails and mileage statements on which she relied." *Id.*

---

[14] Moreover, Plaintiff's Declaration clarifies the 7.5 hour discrepancy between Plaintiff's typical weekly schedule (80.5 total hours) and the average weekly hours Plaintiff claims he worked (73 hours). *See* ECF No. [36-1] ¶ 4 (explaining Plaintiff typically "visited [his] sick (and now deceased) mother briefly during some of the days to check on her."); *see also* ECF No. [30-3] at 49 (explaining Colvard "let me go home every once in a while throughout the day to check on [Plaintiff's mother] and give her lunch or dinner or whatever the case may be.").

The Eleventh Circuit affirmed the district court's grant of summary judgment to the defendant. *Id.* at 790-91. The court observed the plaintiff's testimony called the defendants' timekeeping into question. *Id.* (citing *Allen*, 495 F.3d at 1315). However, the plaintiff "did not offer any documentation of her own, [instead] submitting only the same time sheets put into evidence" by the defendants. *Id.* Further, the Eleventh Circuit observed the time sheets the plaintiff put into evidence confirmed the defendants' time sheets and paystubs were accurate. *See id.* As the court explained, "[t]o the extent [the plaintiff] rejects [the defendant's] records, the burden is on her to produce specific evidence showing she did in fact perform work without compensation and that her work was in excess of the 40-hour workweek." *Id.* The court accordingly concluded "[o]n this record, [the plaintiff] failed to establish there was a genuine issue about whether she worked unpaid overtime." *Id.* at 790.

Here, Plaintiff also fails to identify specific dates when he worked overtime and does not offer record evidence to corroborate his testimony. The similarities end there, however. Unlike the plaintiff in *Morgan*, Plaintiff testified that he worked overtime each week during the Claim Period. *See, e.g.*, ECF No. [30-3] at 9 ("Every week during mid-August 2020 through mid-April 2021, I wasn't paid my correct time."). Further, Plaintiff testified Defendants prohibited him from reporting overtime. ECF No. [30-3] at 12, 20; ECF No. [36-1] ¶ 5. Plaintiff accordingly argues there are no time records to reject—not that Defendants' admittedly accurate time records fail to tell the full story of his overtime work. Moreover, the defendants in *Morgan* provided time sheets and paystubs upon which the plaintiff relied, and which negated the reasonableness of the inference that she worked unpaid overtime. *See* 750 F. App'x at 790-91. Defendants offer no record evidence here, let alone time sheets and paystubs. Plaintiff's testimony is instead challenged by Colvard's conflicting testimony. *Morgan* is therefore distinguishable, as the undisputed evidence fails to

rebut Plaintiff's testimony that Defendants have no time records on which to rely. The Court accordingly finds neither *Jackson* nor *Morgan* demonstrate Defendants are entitled to judgment as a matter of law on this record. The same is true regarding the other cases cited in Defendants' Motion. None found summary judgment was warranted where, as here, the plaintiff offered unrebutted testimony that they were prohibited from reporting overtime hours *and* provided a relatively clear weekly estimate of those hours.

*Loiseau v. Thompson, O'Brien, Kemp & Nasuti, P.C.*, 499 F. Supp. 3d 1212 (N.D. Ga. 2020) is instructive. The court found the undisputed evidence "demonstrate[d] that: (1) Plaintiff was subject to the policies of [the defendant's] Employee Handbook; (2) [the defendant's] Employee Handbook prohibited 'off-the-clock' work; (3) Plaintiff had opportunities to correct her timesheets to report overtime, and did so at least twenty (20) times; (4) Plaintiff received overtime pay every time she officially reported it; and (5) none of Plaintiff's Excel or Paycor timesheets were ever rejected, tampered with, or altered." *Id.* at 1222 (record citation omitted). Moreover, the plaintiff failed to provide "any evidence that anyone altered her timesheets or refused to accept them for any overtime hours she reported." *Id.* The court accordingly found the plaintiff was precluded from proving her case as a matter of a just and reasonable inference and granted summary judgment to the defendants. *Id* at 1222-23.

*Loiseau* distinguished *Allen* and *Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011) because, unlike those cases, the plaintiff did *not* testify his "employer's records were inaccurate because he was instructed by his manager to inaccurately record his hours," or was informed by "supervisors that they would not get paid for overtime work." *Id.* at 1222 (citing *Kuebel*, 643 F.3d at 363; *Allen*, 495 F.3d at 1316). That is precisely what Plaintiff described here. *See, e.g.*, ECF No. [30-3] at 12-14; ECF No. [36-1] ¶ 5. Further, as noted, *none* of the evidence

relied on in *Loiseau* is available on this record. Defendants' reliance on *Loiseau* is misplaced and *instead* supports finding Plaintiff's testimony creates a triable issue regarding his overtime work, as in *Allen* and *Kuebel*.

Defendants' remaining cases are similarly distinguishable. Most found summary judgment was warranted because the defendant-employer's undisputed evidence negated the reasonableness of the inference that the plaintiff-employee performed uncompensated overtime work. *See Everett v. Grady Mem'l Hosp. Corp.*, No. 1:15-CV-173-SCJ, 2016 WL 9651268, at *24 (N.D. Ga. May 12, 2016), *aff'd*, 703 F. App'x 938 (11th Cir. 2017) (granting summary judgment where (1) it was undisputed the defendant's timekeeping system recorded the plaintiff's "on-call" hours, (2) there was no evidence a specific supervisor informed the plaintiff she could not work overtime, (3) the plaintiff testified she had not made an estimate of her hours worked); *Ihegword v. Harris Cnty. Hosp. Dist.*, 555 F. App'x 372, 375 (5th Cir. 2014) (co-worker testimony and timecards "soundly refuted [the plaintiff's] allegations of clocking out and continuing to perform uncompensated overtime work."); *Pigford v. Flotel Inc.*, No. 117CV01652SCJRGV, 2018 WL 10741753 (N.D. Ga. Nov. 19, 2018), *report and recommendation adopted*, No. 1:17-CV-1652-SCJ, 2018 WL 10741755 (N.D. Ga. Dec. 10, 2018) (similar). The others simply found the plaintiff's conclusory assertions failed to demonstrate a genuine dispute of material fact. *Segraves v. AGCO, Inc.*, No. 1:17-cv-1997, 2018 WL 3772397, at *4 (N.D. Ga. 2018) ("The only evidence provided by the Plaintiff as to this issue is a list of hours and dates. The Plaintiff provides no explanation of the meaning of this list or how it was created."); *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005) (the plaintiff "offered no factual allegations *at all* to substantiate her claim, and she presented *no* evidence of the amount or the extent of hours she worked without compensation.") (emphasis in original)).

As discussed, Defendants fail to rebut Plaintiff's testimony, and Plaintiff's testimony provides a specific weekly average of his overtime work. The Court is accordingly unpersuaded the undisputed evidence establishes Defendants are entitled to judgment as a matter of law. Plaintiff's testimony demonstrates that whether he worked uncompensated overtime constitutes a genuine dispute of material fact.

Defendants are correct that Plaintiff lacks documentation of his overtime work. As Plaintiff observes, however, his testimony is both consistent and provides a relatively clear estimate of Plaintiff's weekly work schedule during the Claim Period. Defendants' only rebuttal evidence consists of Colvard's testimony denying she prevented Plaintiff from reporting his overtime hours, and asserting he was always paid for the time he submitted. Consistent with *Deluca*, the Court finds "[t]he reasonableness, the credibility, of the hours Plaintiff alleges is a question for the jury." *Id.* As the Court "cannot opine on Plaintiff's credibility or weigh evidence" on this posture,[15] summary judgment is accordingly unwarranted.

### ii. Whether Defendants Knew Plaintiff Worked Overtime

Defendants also argue they are entitled to judgment because Plaintiff fails to provide evidence showing they knew or should have known Plaintiff performed uncompensated overtime

---

[15] This finding comports with numerous decisions in this Circuit. *See, e.g.*, *Chen v. Wow Rest. TH, LLC*, No. 8:22-CV-2774-VMC-NHA, 2024 WL 184251, at *5 (M.D. Fla. Jan. 17, 2024) ("While Plaintiffs lack documentation to support the number of hours they actually worked or the actual hourly pay they received, they can rely on their own testimony and their average work schedule to establish the number of hours worked and the rate of pay received."); *Hernandez v. Quality Constr. Performance, Inc.*, No. 1:13-CV-23267-UU, 2014 WL 12531531, at *3 (S.D. Fla. May 6, 2014) ("As Plaintiff has discredited the accuracy of Defendants' time records, Plaintiff's affidavit that his average schedule was from 7 A.M. to 7 P.M. each day, Monday through Friday, with one Saturday each month, is sufficient to deny Defendants' Motion."); *Brown v. Gulf Coast Jewish Fam. Servs., Inc.*, No. 810-CV-1749-T-27AEP, 2011 WL 3957771, at *7 (M.D. Fla. Aug. 9, 2011), *report and recommendation adopted*, No. 8:10-CV-1749-T-27AEP, 2011 WL 4005928 (M.D. Fla. Sept. 8, 2011) ("Although Plaintiff largely submits her own testimony to demonstrate the amount and extent of unpaid work, the Court is satisfied that Plaintiff has produced a just and reasonable inference as to the amount of unpaid work, and that any inconsistency or uncertainty in [her] testimony about the number of unpaid hours of work should be tested by cross-examination and left for the jury to consider.") (alterations accepted; internal quotation omitted)).

work. "Actual knowledge can be presumed when plaintiffs or other employees testify that they worked overtime hours and notified their supervisors that they had not received the appropriate compensation." *Loiseau*, 499 F. Supp. 3d at 1223 (citing *Allen*, 495 F.3d at 1318; *Jarmon v. Vinson Guard Servs.*, No. 2:08-CV-2106-VEH, 2010 WL 11507029, at *11 (N.D. Ala. July 13, 2010)). "Constructive knowledge can be presumed even if an employer does not have actual knowledge of an employee's overtime work, if the employer had reason to believe that the employee was working beyond her shift." *Id.* (citing *Allen*, 495 F.3d at 1318).

Plaintiff repeatedly testified that Colvard told him not to report his overtime hours, and threatened to fire him if he did. ECF No. [30-3] at 12, 14, 20; ECF No. [36-1] ¶ 5. Plaintiff also testified all the work he performed was "with [Colvard's] knowledge and approval." ECF No. [36-1] ¶ 6. That testimony supports that Defendants had actual or constructive notice Plaintiff performed uncompensated overtime work and constitutes a genuine dispute of material fact. *See Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801 (11th Cir. 2015) ("Knowledge may be imputed to the employer when its supervisors or management 'encourage [ ] artificially low reporting.'") (quoting *Allen*, 495 F.3d at 1319)). Defendants' reliance on *Louiseau* and *Seagraves* is misplaced.[16] Neither case featured similar testimony. *See* 499 F. Supp. 3d at 1222; 2018 WL 3772397, at *4. As discussed, *Loiseau* explicitly noted the *absence* of any such testimony. 499 F. Supp. 3d at 1222. Plaintiff's testimony accordingly demonstrates the existence of a genuine dispute of material fact regarding Defendants' actual or constructive knowledge of his overtime work.

---

[16] Defendants' assertion that Plaintiff waived this argument is meritless. Plaintiff's Response details his testimony that Colvard told him not to report overtime hours. That testimony satisfies Plaintiff's burden as the non-movant to demonstrate the existence of a genuine dispute of material fact.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment, **ECF No. [30]**, is **DENIED**.

2. Plaintiff's overtime claim shall proceed against Defendants.

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 19, 2024.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record