## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 23-cv-23216-BLOOM/Torres

ADRIAN FORBES,

      Plaintiff,

v.

BRITT'S BOW WOW BOUTIQUE, INC.,
and MERRI COLVARD,

      Defendants.

_____/

### ORDER ON RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
### PURSUANT TO FED. R. CIV. P. 50(b)

**THIS CAUSE** is before the Court upon Defendants Britt's Bow Wow Boutique, Inc. and Merri Colvard's ("Defendants") Renewed Motion for Judgment as a Matter of Law, ECF No. [77] ("Motion"). Plaintiff Adrian Forbes filed a Response in Opposition, ECF No. [84], to which Defendants filed a Reply, ECF No. [85]. The Court has reviewed the Motion, the supporting and opposing submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendants' Motion is denied.

## I.  BACKGROUND

This is an action for uncompensated wages arising from Defendants' failure to pay Plaintiff for overtime work pursuant to the Fair Labor Standards Act ("FLSA"). Plaintiff alleged Defendants failed to pay Plaintiff his "full and proper overtime wages" and asserted a FLSA claim for unpaid overtime wages against Defendants. ECF No. [1] The case proceeded to a jury trial, and at the close of the evidence, Defendants moved for judgment as a matter of law. The Court denied the motion and the jury thereafter found that Defendants violated the FLSA by failing to properly

compensate Plaintiff for the overtime hours he had worked. ECF No. [69]. Consistent with the jury's verdict, the Court entered judgment for Plaintiff in the amount of $38,206.08, which represented the $12,735.36 verdict rendered by the jury against Britt's Bow Wow Boutique, Inc., the $6,367.68 verdict against Merri Colvard, plus $19,103.04 in liquidated damages. ECF No. [76].

Defendants now seeks judgment as a matter of law because Plaintiff "failed to offer any credible, admissible evidence that [Plaintiff] worked *any* overtime." ECF No. [77]. In the Motion, Defendants argue (1) Plaintiff failed to offer any proof that he worked for Britt's Bow Wow from August 2020 through mid-December 2020, notwithstanding the claim period was from August 23, 2020 through April 11, 2021;  (2) the Court impermissibly instructed the jury on "a relaxed legal standard for cases where a defendant 'failed to keep adequate time and pay records for Plaintiff'" despite Defendants offering "into evidence every single time record, for every pay period Plaintiff worked"; (3) even assuming the relaxed standard was appropriate, Plaintiff "failed to offer any evidence of actual overtime worked"; (4) Plaintiff failed to "offer any evidence or even argument that Defendants 'knew or showed reckless disregard that their conduct was prohibited by the FLSA'"; and (5) Plaintiff failed to offer any evidence "supporting the jury's damages awards." *Id.* at 2-3.

Plaintiff responds that (1) Colvard testified, and the parties stipulated, that Plaintiff worked from August 23, 2020, through April 11, 2021; (2) the relaxed standard was appropriate in light of Plaintiff's testimony that Colvard did not formally track his hours; (3) Plaintiff "testified in detail about the overtime he worked, his schedule, and his duties"; (4) Plaintiff's testimony that Defendants did not permit him to report overtime hours was sufficient to show Defendants had knowledge that their conduct violated the FLSA; and (5) the jury award was not unduly speculative because it was based on Plaintiff's testimony that he worked "32 overtime hours per week during

a period that totaled 33 weeks" at a hourly rate of $18.00 and therefore, the jury award of $19,103.04 was within the limits of the evidence presented at trial. ECF No. [84].

## II.  LEGAL STANDARD

### A.  Rule 50(b)—Motion for Judgment as a Matter of Law

"Under Federal Rule of Civil Procedure 50, judgment as a matter of law is appropriate only if the facts and inferences point so overwhelmingly in favor of one party . . . that reasonable people could not arrive at a contrary verdict." *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1173 (11th Cir. 2010) (quotation marks omitted; alteration in the original). The Court must consider the evidence in the light most favorable to the nonmoving party and determine "whether or not reasonable jurors could have concluded as this jury did based on the evidence presented." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997) (citation omitted). It is "the jury's task," not the Court's, "to weigh conflicted evidence and inferences, and determine the credibility of witnesses." *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016) (quotation marks and citation omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

When considering the evidence, the Supreme Court stated in *Reeves v. Sanderson Plumbing Prods. Inc.* that:

> [A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.

530 U.S. 133, 151 (2000) (emphasis added) (internal quotations omitted) (citations omitted), quoted in *Cadle v. GEICO Gen. Ins. Co.*, 838 F.3d 1113, 1127 (11th Cir. 2016).

A Rule 50(b) motion is made after the case has been submitted to the jury, "thereby insuring that a motion for such a judgment is used only to invite the district court to reexamine its decision not to direct a verdict as a matter of law, not to reexamine facts found by the jury." 27A Fed. Proc., L. Ed. § 62:695 (Supp. 2022) (emphasis added). "[A]ny renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a) at the close of the evidence and prior to the case being submitted to the jury." *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir. 2004).

> "The standard for granting a renewed motion for judgment as a matter of law under Rule 50(b) is precisely the same as the standard for granting the pre-submission motion [under 50(a)]." *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007) (alteration in original) (quoting 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2537 (2d ed. 1995)). Thus, as with motions under Rule 50(a), the question before a district court confronting a renewed Rule 50(b) motion is whether the evidence is "legally sufficient . . . to find for the party on that issue." Fed. R. Civ. P. 50(a)(1).

*McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016).

**B.  FLSA Overtime Claim**

"A plaintiff who has worked overtime without pay may bring a private FLSA action for damages." *Florez v. Workforce Sol. Staffing, LLC et al.*, No. 20-22766-CIV, 2021 WL 7161783, at *6 (S.D. Fla. July 26, 2021) (citing 29 U.S.C. § 216(b)), *report and recommendation adopted sub nom.*, No. 20-22766-CIV, 2022 WL 539078 (S.D. Fla. Feb. 23, 2022).

Under the FLSA, an employer must pay its employees "an overtime wage of one and one-half times his regular rate for all hours he works in excess of forty hours per week." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011); *see also* 29 U.S.C. §

207(a). "In order to prevail on their claim in this case, Plaintiffs must prove that they were suffered or permitted to work without compensation." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314 (11th Cir. 2007) (citing 29 U.S.C. § 201 *et seq.*). "Courts have interpreted this to mean that a FLSA plaintiff must demonstrate that (1) he or she worked overtime without compensation and (2) the [defendant] knew or should have known of the overtime work." *Id.* at 1314-15 (citing *Reich v. Dept. of Cons. and Nat. Res.,* 28 F.3d 1076, 1081-82 (11th Cir. 1994); 29 C.F.R. § 785.11).

## III. DISCUSSION

Defendants contend that the undisputed evidence demonstrates they are entitled to judgment as a matter of law. ECF No. [77] at 1. Defendants argue Plaintiff failed to provide any evidence that he worked overtime without compensation, particularly with respect to the period from August 2020 through mid-December 2020, or that Defendants knew or should have known of that overtime work. *Id.* at 2-3. Defendants also maintain that the Court improperly instructed the jury on the more relaxed standard for proving overtime hours under the FLSA, and even under the more relaxed standard, Plaintiff provided insufficient evidence to prevail on his claim. Consequently, due to the lack of evidence, the damages the jury awarded were unduly speculative. *Id.* at 3.

Plaintiff responds that Colvard testified that Plaintiff worked for the relevant claim period, and, in any event, the parties previously stipulated that Plaintiff worked throughout the claim period. ECF No. [84] at 1-2. Furthermore, Plaintiff contends he demonstrated Defendants' time records were either missing or inaccurate for the claim period, and therefore, Plaintiff was permitted to rely on the relaxed FLSA standard to prove his overtime claim. *Id.* at 2-3. Given the relaxed standard, Plaintiff argues his testimony was sufficient to establish that he worked the

overtime hours alleged and that Defendants knowingly failed to compensate him for that overtime work. *Id.* at 3-8

### A. Whether Plaintiff Offered Sufficient Proof He Worked for Defendant from August 2020 Through Mid-December 2020

According to Defendants, while Plaintiff alleged the claim period includes August 23, 2020, through mid-December 2020, Plaintiff presented "no credible or admissible evidence" that he "was even working for Britt's Bow Wow during that period . . . let alone that he worked overtime during that period." ECF No. [77] at 4.[1] Although more than 9,000 pages worth of documents were produced at trial, Defendants contend not a single document indicates that Plaintiff worked from August 2020 through mid-December 2020. *Id.* To highlight the significance of the lack of documents for the first four months of the claim period, Defendants point out that, between mid-December 2020 and mid-April 2021, Plaintiff provided text messages with Colvard that evidenced the work Plaintiff performed. *Id.* According to Defendants, those text messages were the only way for Plaintiff to communicate the work he completed to Colvard and Megan Fleming since he was working in Florida, and Colvard and Fleming resided outside of Florida. *Id.* Consequently, Defendants contend the absence of text messages between Plaintiff and Colvard

---

[1] The Court takes a moment to note that resolving a motion is tedious and unnecessarily more difficult when the parties either do not know their own facts, or are too careless to state them correctly in their briefs. While Defendants repeatedly assert throughout their Motion that the relevant period where there is no evidence of Plaintiff working for Britt's Bow Wow spans from August 23, 2020, through mid-December 2021, ECF No. [77] at 1-6, 8, Plaintiff's total claim period only spans from August 2020-April 2021. *See* ECF No. [77] at 1 n. 1; ECF No. [46] at 2 (quoting ECF No. [36-1] ¶ 3). Therefore, because Defendants acknowledge that Plaintiff offered evidence of work for at least part of the claim period, Defendants cannot in good faith contend there was no evidence that Plaintiff worked from August 2020-December 2021.

Plaintiff's Response is also not a model of clarity. Plaintiff states that "Defendants deny Plaintiff presented evidence at trial that Forbes worked during the period of *August 23, 2023*, through Mid-December 2021. ECF No. [84] at 1 (emphasis added).

from August 2020 to December 2020 is strong evidence that Plaintiff did not work for Britt's Bow Wow at that time.

Defendants further argue that "Plaintiff's W-4 establishes that his first day of employment with Britt's Bow Wow was December 21, 202[0]." *Id.* at 5 (citing Defs. Trial Ex. 43).[2] Defendants maintain the December 21, 2020 start date is further buttressed by the fact that Plaintiff did not provide Colvard with his employment information until December 28, 2020. *Id.*[3] Thus, according to Defendants, given the absence of evidence beyond Plaintiff's own assertions that he worked for Britt's Bow Wow prior to December 2020, in combination with the Defendants' affirmative evidence that Plaintiff did not start until December 2020, the Court should not have allowed the jury "to consider any alleged overtime before December 28, 202[0]." *Id.* at 5.

Plaintiff responds that both the Parties' Joint Stipulation and the evidence presented at trial directly contradict Defendants' contention that Forbes worked for Britt's Bow Wow from August 23, 2020 through Mid-December 2020. *See* ECF No. [84]. According to Plaintiff, he and Colvard each testified at trial that Plaintiff worked for Britt's Bow Wow from August 2020 through Mid-December 2020. *Id.* at 1-2.[4] Before trial, the Parties also agreed in their Joint Pretrial Stipulation

---

[2] Defendant's Motion states that the W-4 shows Plaintiff did not start working for Brit's Bow Wow until December 21, 2021. However, nothing in Defense Exhibit 43 states that Plaintiff's first day of employment was December 21, 2021. *See* ECF No. [70-1] at 248. The W-4 is a 2020 tax form, the employee's signature is dated December 20, 2020, and Britt's Bow Wow Boutique listed the first date of employment as December 31, 2021. *Id.* Moreover, the payroll and timecards indicate that Plaintiff began working for Britt's Bow Wow in 2020. Yet again, Defendants either intentionally or carelessly misrepresent the contents of the evidence presented to the jury.

[3] Again, despite Defendants' representation to the contrary, the text messages referenced in Exhibit 42 purport to be from 2020, not 2021. *See* ECF No. [70-1] at 246. As such, the Court is left to assume that Defendants are making an argument that Plaintiff did not start working for Britt's Bow Wow until December 2020, not December 2021.

[4] However, as Plaintiff concedes in his Response, Colvard argued that Plaintiff was merely a contractor from August 2020 through Mid-December 2020 and did not become a full-time employee until later.

that "[a]t all times material hereto, Plaintiff was . . . an 'employee' of Defendants as defined by

the FLSA," and that the relevant claim period was from "August 23, 2020 through April 11, 2021."

ECF Nos. [53], [84] at 1-2. Accordingly, since Defendants admitted that Plaintiff was an employee

"as defined by the FLSA" during the entire claim period, and Colvard later testified at trial that

Plaintiff worked for Defendants during that period, Plaintiff maintains that there can be no serious

dispute that there was sufficient evidence that Plaintiff worked for Defendants from August 23,

2020, through mid-December 2020. *See* ECF No. [84] at 1-2.

There is no merit to Defendants' argument that no evidence was presented at trial, nor was

there a stipulation prior to trial, that Plaintiff was an employee from August 23, 2020 through mid-

December 2020. The record reflects that the Parties stipulated that the relevant claim "for overtime

is for the period of August 23, 2020 through April 11, 2021," and that "all times material hereto,

Plaintiff was a resident of Florida and *an 'employee' of Defendants as defined by the FLSA."* ECF

No. [53] at 3 (emphasis added). Based on the Pretrial Stipulation, there is no serious dispute that

Plaintiff established he was Defendants' employee, as defined by the FLSA, from August 2020

through mid-December 2020. *See G.I.C. Corp., Inc. v. United States*, 121 F.3d 1447, 1450 (11th

Cir. 1997) (explaining "parties are bound by their stipulations and a pretrial stipulation frames the

issues for trial).

Moreover, Plaintiff testified at trial that he was an employee during the relevant claim

period—August 2020 to April 2021. While Colvard may have contradicted Plaintiff's testimony

by asserting that Plaintiff was merely a contractor during his first four months of employment, that

inconsistency is irrelevant to the Court's Rule 50(b) inquiry as such considerations go to the weight

of the evidence and the credibility of the witnesses, not the sufficiency of the evidence. *See*

*Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1312 (11th Cir. 2013) ("In conducting

our [Rule 50(b)] review, '[w]e do not make credibility determinations or weigh the evidence.'")

(quoting *Hubbard v. Bank Atlantic Bancorp, Inc.*, 688 F.3d 713, 724 (11th Cir. 2012)); *McGinnis*,

817 F.3d at 1254 ("In considering whether the verdict is supported by sufficient evidence, 'the

court must evaluate all the evidence, together with any logical inferences, in the light most

favorable to the non-moving party.' And, as we have stressed, 'it is the jury's task—not the

court's—to weigh conflicting evidence and inferences, and determine the credibility of

witnesses.") (quoting *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1560 (11th Cir.

1995) and *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 715 (11th Cir. 2002)).

Accordingly, the Court rejects Defendants' argument that Plaintiff failed to establish he was an

employee throughout the entire claim period.[5] The Court therefore turns to the question of whether

Plaintiff provided sufficient evidence of the overtime hours he worked during the claim period.

### B. Whether the Court Properly Instructed the Jury on the Legal Standard for FLSA Overtime Claims

Defendants contend that the Court improperly "instructed the jury that Plaintiff could rely

on an estimate of alleged overtime" because the relaxed standard only applies if Plaintiff has

proven "Defendants did not keep complete or accurate time records." ECF No. [77] at 6.

Defendants claim that, at trial, they "offered into evidence every single time record, ADP Earning

Statements, Earning Records, and Payroll Records for Plaintiff" while Plaintiff "did not offer any

evidence that any of the records were missing[.]" *Id.* According to Defendants, the employment

records introduced at trial were therefore sufficient to preclude Plaintiff from relying on the relaxed

standard to prove the overtime hours he worked.

---

[5] As noted earlier, Defendants do not dispute that Plaintiff was an employee during the remaining portion of the claim period. Therefore, the Court need not conduct a review of the record involving the period from December 2020 to April 2021 to determine whether there was sufficient evidence that Plaintiff was an employee as defined by the FLSA.

Plaintiff argues the "relaxed standard" for cases involving incomplete or inadequate records was appropriate here because Plaintiff testified "in detail about . . . Defendants' failure to maintain accurate time records." ECF No. [84] at 2.

The Court remains convinced that the jury instructions provided for Plaintiff to prove his overtime hours was the appropriate legal standard in this case. While it is true that "an employee bringing a claim for unpaid overtime wages must initially demonstrate that [he] performed work for which [he] was not properly compensated," it is still "the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment" as "[t]he employer is in a superior position to know and produce the most probative facts concerning the nature and amount of work performed and '[e]mployees seldom keep such records themselves.'" *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1314-15 (11th Cir. 2007) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)). Therefore, where the employer has failed to keep records or the records cannot be trusted, the employee satisfies h[is] burden of proving that [he] performed work without compensation if [he] 'produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Jackson v. Corrections Corp. of Am.*, 606 F. App'x 945, 952 (11th Cir. 2015) (quoting *Allen*, 495 F.3d at 1316).

While Defendants contend that the relaxed standard is only appropriate where there are no time keeping records or no overtime, courts have found that so long as there are significant or material defects in the employer's records, an employee must only satisfy the relaxed burden to prove their claim. *See Celorrio v. Facci of Merrick Park, Inc.*, Case No. 19-25283, 2022 WL 4594119, at *4 (S.D. Fla. June 22, 2022) ("[T]he extent of the employer's records' inaccuracy must be material and significant in order for the trier of fact to rely on burden shifting under *M[t]. Clem[e]ns*. That is the standard the Eleventh Circuit has applied, and others have followed.");

*Solano v. A Navas Party Prod., Inc.*, 728 F. Supp. 2d 1334, 1343 (S.D. Fla. 2010) (finding that the plaintiff could "prove his damages under the relaxed burden-shifting scheme" where the defendants produced records and time cards but there were significant defects with records).

Here, there are more than simply a few missing entries or inconsistencies in the payroll and employment records Defendants offered into evidence. As noted above, Plaintiff established he was an employee from August 23, 2020 through December 20, 2020. However, Defendants failed to provide any payroll records or any other type of records evidencing the hours Plaintiff worked during that four-month period. Even assuming, as Colvard testified, that Plaintiff was merely a contractor during that time, Defendants would have been able to or should have been able to, produce some records documenting Plaintiff's work prior to Britt's Bow Wow processing Plaintiff as a formal employee in late December 2020. However, Defendants did not provide any such records at trial for the jury to consider.

Moreover, the records Defendants *did* produce for the remainder of the claim period were either inaccurate, inconsistent, or had the potential to leave a reasonable jury incredulous about the veracity of the record keeping. For instance, the "Time Card" Defendants introduced as evidence states that for the entire month of December 2020, Plaintiff only worked 12.48 hours. ECF No. [70-1] at 182 (Defs' Exhibit 13). However, in the ADP Earning Statements covering December 21, 2020 through December 27, 2020, the records reflect that Plaintiff worked 20 hours. *Id.* at 213 (Defs' Exhibit 14).

Furthermore, during the trial, Plaintiff pointed out four separate occasions from December 2020 to April 2021 where, although Plaintiff did not work a standard forty-hour work week, the Defendants' records reflected that he worked precisely forty hours each week. *Id.* (Defs. Exhibit 14). Even more noteworthy, however, is that for those four weeks, none of the accompanying time

card entries reflect that Plaintiff worked forty hours. *Id.* (Defs. Exhibit 13). In some instances, the timecards reflect Plaintiff worked more than forty hours, and in others, they indicate he worked less. While it may be unclear from the record which is the correct information, it is certainly clear that the records Defendants produced could not be considered reasonably accurate or precise so as to have rebutted Plaintiff's claim of incomplete or missing records. Thus, given the evidence of missing and inaccurate employment records, Plaintiff was properly permitted to proceed under the FLSA standard to prove his overtime claim and the jury was properly instructed.

### C.  Whether Plaintiff Offered Sufficient Evidence of Actual Overtime Worked

Alternatively, Defendants contend that Plaintiff still failed to provide sufficient evidence to support his overtime claim under the relaxed standard. Defendants argue that "Plaintiff's entire case boiled down to his unsupported testimony that he worked an 'average' amount of hours of overtime every week during the supposed claim period." *Id.* at 8. According to Defendants, Plaintiff's testimony was based on pure speculation as it was an average estimate of overtime and not supported by any records that would evidence the actual amount of overtime hours worked.

Plaintiff responds that he testified in detail "about the overtime he worked, his schedule, and his duties." ECF No. [84] at 3. Plaintiff points the Court to its Order on Motion for Summary Judgment where the Court found that "Plaintiff stated his average weekly work schedule during the [c]laim [p]eriod with relative precision complete with details about his tasks." *Id.* at 4. (quoting *Forbes v. Britt's Bow Wow Boutique, Inc.*, Case No. 23-cv-23216, 2024 WL 3874596, at *10-11 (S.D. Fla. Aug. 20, 2024)). As such, the Court was satisfied at the time that Plaintiff's evidence could be presented to a jury under the relaxed standard because "Plaintiff consistently testified he worked an average of 73 hours a week, complete with a daily breakdown on his hours, as well as specific details about his job duties." *Id.*

The Court finds Plaintiff satisfied his burden at trial through the record evidence by creating a reasonable inference as to the amount and extent of overtime work performed for Defendants' during the claim period. Unlike the employees Defendants point to in *Jackson v. Corrections Corp. of Am.* and *Pigford v. Flotel Inc.,* "who never stated with any clarity or precision the number of hours [they] allegedly worked, the amount or nature of that work, where or when that work was completed, or anything else that would assist a factfinder in approximating [the plaintiff's] unpaid overtime," Plaintiff testified and provided consistent and specific details about his job duties and weekly overtime hours. *Jackson v. Corrections Corp. of Am.*, 606 F. App'x 945, 952 (11th Cir. 2015); *Pigford v. Flotel Inc.*, Civ. Act. File No. 1:17-cv-01652, 2018 WL 10741753, at *15 (N.D. Ga. Nov. 19, 2018).[6] Plaintiff testified at trial that he worked an average of 73 hours a week, and stated with specificity his typical working hours.[7] Plaintiff supported his claim of hours worked with details about his tasks, as well as when and where he would complete each of those tasks assigned to him.[8] Moreover, Plaintiff explained that he was the only Britt's Bow Wow

---

[6] The evidence in this case is also distinguishable from the other two cases cited by Defendants. In *Evertt v. Grady Memorial Hospital Corp.*, the plaintiff acknowledged she was only scheduled to work 30-35 hours per week, and she admitted that she had not made an estimate of the number of overtime hours worked, nor could she identify the specific weeks in which she was entitled to overtime pay. Civ. Act. File No. 1:15-CV-173, 2016 WL 9651268, at *24 (N.D. Ga. May 12, 2016). Therefore, unlike here, there was a lack of evidence on which a reasonable jury could rely to determine the amount of unpaid overtime she worked. As for *Morgan v. Kalka & Baer LLC*, 750 App'x 784 (11th Cir. 2018), that case is also distinguishable for the same reasons stated in the Court's Order on Motion for Summary Judgment. ECF No. [46] at 21. ("Unlike the plaintiff in *Morgan*, Plaintiff testified that he worked overtime each week during the Claim Period. *See, e.g.*, ECF No. [30-3] at 9 ("Every week during mid-August 2020 through mid-April 2021, I wasn't paid my correct time."). Further, Plaintiff testified Defendants prohibited him from reporting overtime. ECF No. [30-3] at 12, 20; ECF No. [36-1] ¶ 5. Plaintiff contends there are no time records to reject—not that Defendants' admittedly accurate time records fail to tell the full story of his overtime work. Moreover, the defendants in *Morgan* provided accurate and precise time sheets and paystubs upon which the plaintiff relied, and which negated the reasonableness of the inference that she worked unpaid overtime. *See* 750 F. App'x at 790-91.").

[7] Plaintiff stated his weekly hours were as follows: Monday, Wednesday, Friday (7:30 a.m. to 1:30 a.m.); Tuesday and Thursday (6:00 p.m. to 3:30 a.m.); and Saturday (12:00 p.m. to 7:30 p.m.).

[8] In particular, Plaintiff testified that he would manage 20 to 40 pets at any given time and "did anything

13

employee working at the Miami location during the claim period notwithstanding that there were typically 20 to 40 dogs at the location at any given point in time. Based on his testimony of the hours he worked, the duties he performed, the number of animals he cared for, the lack of assistance Plaintiff had during the claim period, and that he was not paid for overtime, Plaintiff produced sufficient evidence that he was not properly compensated for overtime hours worked notwithstanding that Plaintiff's testimony included estimations and approximations. *See Evertt v. Grady Memorial Hospital Corp.*, Civ. Act. File No. 1:15-CV-173, 2016 WL 9651268, at *23 (N.D. Ga. May 12, 2016) ("The Court recognizes that it is permissible for a plaintiff to rely on overtime hours that are 'reconstructed from memory, inferred from the particular jobs. . ., or estimated in other ways.'") (quoting *Espensheid v. DirectSat USA, LLC*, 705 F.3d 770, 775 (7th Cir. 2013)); *Torres v. Rock & River Food, Inc.*, 244 F. Supp. 3d 1320, 1333 (S.D. Fla. 2016) ("Although the Plaintiff could not answer questions during his deposition about exact dates for which he was owed overtime and what amount of money he would be willing to accept, this is not fatal to his claim. Plaintiff contends that he worked approximately sixty hours a week. This estimation is not grossly disproportionate to the times shown on the available time cards.").

As the district court explained in *Allen v. Robert F. DeLuca, M.D., P.A.*, especially when applying the relaxed FLSA standard, the reasonableness and "the credibility [ ] of the hours Plaintiff alleges is a question for the jury [because] '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether [s]he is ruling on a motion for summary judgment or for a directed verdict.

from kenneling the pets, boarding the pets[,] picking up pets from the airport[,] dropping them off at the airport[,] [and] dropping them off at the client's house [a]nywhere in the state." He also claims he took the dogs to the bathroom, cleaned their crates, and ensured the animals had their proper paperwork for travel. With regard to his transportation of pets, he stated he "drove to Virginia two or three times[,] Georgia two [or] three times," as well as Alabama, North Carolina, South Carolina, and Buffalo, New York a couple of times.

The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."' No. 18-81265-CIV, 2019 WL 3890457, at *3 (S.D. Fla. June 18, 2019) (quoting *Anderson*, 477 U.S. at 255). Defendants nevertheless insist that Plaintiff's testimony at trial was deficient because Plaintiff failed to offer the following types of evidence:

- His actual schedule or actual task performed on any specific day in the claim period;

- Specific hours worked, including specific days those hours were worked that include overtime;

- Specific tasks performed for which Plaintiff was allegedly not paid overtime;

- Documentary proof showing the tasks/hours allegedly performed on a specific day or week that demonstrate that he worked overtime;

- Documentary proof showing the actual amount of hours worked on any specific day or week;

- His own time records that establish alleged overtime worked, including records that would support an alleged "estimated" hours per week;

- Any records whatsoever that showed Plaintiff worked unpaid overtime; or

- Any records or documentary proof whatsoever that called into question Defendants' time records and established that, contrary to the records, Plaintiff worked overtime.

Based on the issues outlined, Defendants' primary contention appears to be that there is no record proof or documentary evidence to support Plaintiff's overtime claim. However, courts in this circuit have made clear that under the relaxed standard, "[t]he employee's burden is not great and . . . an employee can successfully shift the burden of proof by presenting *his own testimony* indicating . . . that he worked the claimed overtime." *Centeno v. I&C Earthmovers Corp.*, 970 F. Supp. 2d 1280, 1287 (S.D. Fla. 2013) (quoting *Jones v. Carswell Prop. Maint., Inc.*, No. 09–22027–CIV, 2012 WL 163035, at *1 (S.D. Fla. Jan. 19, 2012)); *Brown v. Gulf Coast Jewish Family*

*Serv., Inc.*, No. 8:10–cv–1749–T–27AEP, 2011 WL 3957771, at *7 (M.D. Fla. Aug. 9, 2011) (report and recommendation) (noting that "much of the evidence concerning the amount and extent of uncompensated work comes from [the p]laintiff's own assertions . . . [a]lthough [the p]laintiff largely submits her own testimony to demonstrate the amount and extent of unpaid work, the Court is satisfied that [the p]laintiff has produced a just and reasonable inference as to the amount of unpaid work, and that "any inconsistency or uncertainty in [her] testimony about the number of unpaid hours of work should be tested by cross-examination and left for the jury to consider."), *report and recommendation adopted* in 2011 WL 4005928 (M.D. Fla. Sept. 8, 2011). Thus, because an employee may testify about the hours he worked and the extent of that work, "any inconsistency or uncertainty in an employee's testimony about the number of unpaid hours of work should be tested by cross-examination and left for the jury to consider." *Frew v. Tolt Technologies Service Group, LLC*, No. 6:09–CV–49–ORL–19GJK, 2010 WL 557940, at *5 (M.D. Fla. Feb. 11, 2010) (citing *Allen*, 495 F.3d at 1317).

Defendants also contend that Plaintiff's testimony was not sufficiently specific as it did not indicate his actual schedule on a given day, the specific hours worked, the specific days those hours were worked, or the specific tasks performed for which he was not paid. However, Defendants misconstrue Plaintiff's burden under the relaxed FLSA standard. *See Kinslow v. 5 Star Filed Services Group, LLC*, Case No. 1:19-cv-1605, 2021 WL 3493564, at *11 (N.D. Ga. Aug. 9, 2021) ("Defendants appear to add a 'specificity' requirement to Plaintiffs' burden that does not exist" under the relaxed burden shifting scheme for FLSA claims) (citing *Solano v. A Navas Party Prod., Inc.*, 728 F. Supp. 2d 1334, 1344 (S.D. Fla. 2010)). When an employer has inaccurate or incomplete records, a plaintiff is not required to "prove the exact amount of time [ ]he spent performing overtime work," nor what specific work constituted overtime work. An approximation

or estimate is sufficient. *See Solano v. A Navas Party Production, Inc.*, No. 09–22847–CIV, 2011 WL 98819, at *10 (S.D. Fla. Jan. 12, 2011) ("*Anderson* allowed the plaintiff 'to prove damages by way of estimate,'… In this case, because of Defendant's own defective record-keeping, Plaintiff did not need to prove his damages with precision.") (quoting *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 602–03 (6th Cir. 2009)); *Maldonado v. Alta Healthcare Group, Inc.*, 17 F. Supp. 3d 1181 (M.D. Fla. 2014); *Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1328 (S.D. Fla. 2001) (concluding that the plaintiff's failure to demonstrate the exact number of overtime hours he worked did not defeat his claim as a matter of law); *Reese v. Fla. BC Holdings, LLC*, No. 617CV1574ORL41GJK, 2020 WL 10486252, at *17 (M.D. Fla. Jan. 16, 2020) (explaining that once a plaintiff demonstrates the relaxed standard is appropriate, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, *even though the result be only approximate*.") (emphasis added) (quoting *Etienne v. Inter-Cty. Sec. Corp.*, 173 F.3d 1372, 1375–76 (11th Cir. 1999)); *De Lotta v. Dezenzo's Italian Rest., Inc*, No. 608CV2033ORL22KRS, 2010 WL 2541702, at *2 (M.D. Fla. June 4, 2010), *report and recommendation adopted sub nom. De Lotta v. Dezenzo's Italian Rest., Inc.*, No. 608CV2033ORL22KRS, 2010 WL 2541714 (M.D. Fla. June 22, 2010) ("If the employer does not come forward with evidence of the precise amount of work performed or other evidence to negate the plaintiff's prima facie case, the 'court may award approximate damages based on the employee's evidence.'") (quoting *Etienne*, 173 F.3d at 1375). Requiring Plaintiff to produce precise and specific estimates rather than reasonable estimations and approximations of his work

would run counter to the remedial purpose of the FLSA and "the great public policy which it embodies" because, as the Eleventh Circuit has explained:

> [I]f an employer has failed to keep proper and accurate records and the employee cannot offer convincing substitutes, the solution is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the [FLSA].

*Allen*, 495 F.3d at 1315-16 (alterations adopted) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds*). Therefore, since Defendants failed to provide precise evidence at trial of the hours Plaintiff actually worked, Plaintiff's estimation of his work and the hours he worked was a permissible basis for the jury to reasonably infer Plaintiff had completed the overtime hours alleged and award damages accordingly.

### D. Whether Plaintiff Offered Sufficient Evidence that Defendants "Knew or Showed Reckless Disregard That Their Conduct was Prohibited by the FLSA"

Defendants contend Plaintiff failed to provide evidence that "Defendants either 'knew' or 'showed reckless disregard' that they were violating the FLSA." ECF No. [77]. Defendants maintain that, at trial, Plaintiff conceded he never notified Defendants of the overtime hours worked, and therefore, Defendants could not have known of any FLSA violation with respect to overtime. *Id.* at 15. According to Defendants, the only evidence offered was Plaintiff's conclusory assertions that Defendants' timekeeping system was inaccurate. *Id.* However, Defendants contend such conclusory testimony alone is insufficient to establish they were on notice of the purported FLSA overtime violations. *Id.*

Plaintiff responds that, at trial, he testified that "Defendants did not permit him to report the overtime hours that he worked." ECF No. [84] at 7. Accordingly, because Plaintiff argues a defendant "cannot disclaim knowledge" where a defendant inhibits truthful reporting of overtime

or where an employer encourages employees to report artificially low hours, Plaintiff contends Defendants cannot argue they lacked knowledge of the FLSA violation given their conduct here. *Id.*

As the Eleventh Circuit explained in *Allen*, "when an employer's actions squelch truthful reports of overtime worked, or where the employer encourages artificially low reporting, it cannot disclaim knowledge." 495 F.3d at 1319 (citing *Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825, 828 (5th Cir. 1973)). At trial, Plaintiff testified that Colvard failed to properly record his hours, prevented Plaintiff from accurately reporting his overtime hours, and would get angry anytime Plaintiff brought up his hours with her. Such testimony is sufficient to impute knowledge of the FLSA violation on Defendants.[9] *See Bailey v. TitleMax of Ga., Inc.*, 776 F.3d 797, 801 (11th Cir. 2015) ("Knowledge may be imputed to the employer when its supervisors or management 'encourage artificially low reporting.'") (quoting *Allen*, 495 F.3d at 1319)[10]; *cf Reich v. Dep't of Conservation & Natural Res., State of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994) ("The cases must be rare where prohibited work can be done . . . and knowledge or the consequences of knowledge avoided.") (quoting *Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 512 (5th Cir. 1969)). Consequently, given Plaintiff's testimony, a reasonable juror could find that Defendants had either constructive or actual knowledge of the FLSA overtime violations.

---

[9] Colvard was Plaintiff's supervisor, therefore, her knowledge can be imputed to Britt's Bow Wow. *See Bailey*, 776 F.3d at 802 ("Both panels ruled that knowledge on the part of supervisors could be imputed to the employers.").

[10] In *Bailey*, the Eleventh Circuit found that the knowledge element of the plaintiff's FLSA overtime claim was satisfied where the defendant explicitly instructed the plaintiff "to underreport his time by working off the clock," and by "changing [the plaintiff's] time records to show fewer hours worked. 776 F.3d at 801. Importantly, those two bases for knowledge were independent of each other, and either one, alone, would have been sufficient to establish the knowledge requirement.

### E.  Whether Plaintiff Offered Sufficient Evidence to Support the Damages Awarded by the Jury

Finally, Defendants argue Plaintiff "did not offer any testimony or evidence at trial about any specific alleged damages." ECF No [77]. Defendants asserts Plaintiff exclusively relied on a "one sentence demonstrative exhibit that was not tied to any evidence," thereby allowing the jury to simply speculate as to what damages they felt were appropriate. *Id.* at 16. According to Defendants, Plaintiff never offered any evidence supporting a precise amount of damages, let alone evidence proving those damages to a reasonable degree of certainty. Because Plaintiff was required to present credible, admissible evidence supporting damages in order to establish his FLSA claim, and had failed to do so here, Defendants contend the jury verdict must be set aside.

Plaintiff responds that the testimony at trial was specific and supported by the record. Plaintiff points out that he testified "he worked an average of 32 overtime hours per week during a period that totaled 33 weeks and that his hourly rate was $18.00." ECF No. [84] at 8. Therefore, based on the evidence Plaintiff presented at trial, he maintains that any amount up to $28,512 of unpaid overtime wages would have been supported by the record. *See id.* Consequently, since the jury awarded a total amount of $19,103.04, which is below the amount supported by the record, there is no basis for Defendants' challenge to the damages awarded.

The Court finds that the jury's award of damages was adequately supported by the record. As explained above, Plaintiff carried his burden necessary to recover damages by testifying at trial both to the number of hours of overtime worked as well as the extent of that work. Plaintiff's proposed damages were directly tied to his testimony that he was paid $18 an hour and worked an average of 33 overtime hours a week during the entirety of the claim period. Therefore, Plaintiff did not request that the jury speculate as to the appropriate amount of damages, but instead, requested that the calculation of damages be based on Plaintiff's reasonable estimation of overtime

hours worked. While the credibility and veracity of that calculation could be called into question,[11] there is no question that the ultimate calculation was based on the evidence presented at trial. To suggest that the relaxed standard does not require an employee to prove, with precision, the number of overtime hours he worked, but then insist that the employee's damage calculation be based on precise evidence is antithetical to the purpose of the relaxed evidentiary standard. *See Brantley v. Ferrell Elec., Inc.*, 112 F. Supp. 3d 1348, 1367 (S.D. Ga. 2015) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) ("The solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work. Such a result would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the [FLSA].")); *see also Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1267 (11th Cir. 2008) ("We recognize, of course, that the jury had to make approximations and estimates in order to arrive at a damages verdict because Farm Stores did not maintain payroll records documenting the number of hours each store manager worked."). Accordingly, the proposed damages and the demonstrative exhibit used to assist in calculating the damages adequately relied on the evidence introduced at trial. Accordingly, Defendants' final argument is rejected.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' Renewed Motion for Judgment as a Matter of Law, **ECF No. [77]**, is **DENIED**.

---

[11] But as the Court explained above, questions of veracity and credibility are for the jury to weigh not for the Court to decide as a matter of law.

Case No. 23-cv-23216-BLOOM/Torres

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 19, 2025.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to: Counsel of Record